22 So.2d 319

**JENNINGS v. PROVIDENT LIFE & ACCIDENT INS. CO. et al.**

**6 Div. 324.**

Supreme Court of Alabama.

May 17, 1945.

J. B. Ivey, of Birmingham, for appellant.

Earl McBee and Kelvie Appelbaum, both of Birmingham, for appellees.

THOMAS, Justice.

The interpleader was to determine conflicting claims to the proceeds of a life insurance policy presented by the intervention of contending parties.

■ It is declared that the statute to that end aims to provide for a speedy, less expensive remedy, in lieu of a bill of interpleader in equity. McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761. In such suit it is the duty of the court to work out the interests of the claimants to the money on principles recognized in law and equity. Gunter & Co. v. Bankers Mortg. Bldg. & Loan Ass'n., 232 Ala. 95, 167 So. 266.

The pleading, by way of an original bill, is to the effect that on the first day of January, 1936, the complainant company issued a policy of insurance on the life of Will Jennings, who died on the third day of April, 1943, while said policy of insurance was in force. On the 8th day of April, 1943, respondent Safronia Jennings filed with the complainant proof of death and statement of beneficiary under which said respondent claimed the benefits due under the provisions of said policy. On the 9th day of April, 1943, respondent Lila Jennings notified complainant that she was the legal widow of said deceased, and claimed the benefits due under the policy of insurance, and because of the conflicting claims of the alleged beneficiaries in the policy of insurance, complainant was unable to determine to whom the death benefits were due and payable and tendered the amount into court.

Safronia, as a respondent, introduced a policy of insurance, made proof of death, and claimed that she was the party named as beneficiary in the policy. This was the effect of her evidence.

Lila Jennings claimed that she was the widow of deceased and in support of her claim presented her marriage license which showed she was married to deceased (assured) on February 27, 1926; that they lived together as husband and wife until the date of their separation in 1931; that they lived, respectively, in Jefferson County, during such period, and that she did not obtain a divorce from the deceased, and was never served with a summons in a divorce suit filed by him against her. The agreement of counsel shows that a minute search had been made of the court records in Birmingham and Bessemer, Jefferson County, and no suit for divorce had ever been filed for the purpose of dissolving the bonds of matrimony between said Lila and Will Jennings, the insured.

The evidence further shows that after the indicated separation from Lila, Will Jennings (the insured) lived with one Mable for a period of two or three years and then lived with Safronia for two or three years as husband and wife. About eighteen months prior to the instant hearing, or in the summer of 1943, Safronia and Will separated, and he returned on or about December 5, 1943, to live with Lila at her home in Birmingham, which was about six months after his separation from Safronia. The evidence further shows that said Jennings lived continuously with Lila as husband and wife until he died on April 2, 1944.

When the assured came back to Lila and lived with her as husband and wife, she did not know that he had the policies of insurance in question, but about two or three weeks before he died, he told her of the insurance policies and that Safronia had them. He repossessed them and delivered them to the said Lila, saying: "I have brought them over to you. * * *. I want you to have them." After such delivery, Lila continuously kept them until the date of Will's death. The evidence further shows that after such delivery Lila began paying the premiums and continued the subsequent premiums on the Industrial Life Policy delivered to her at the same

time. The premiums on the Woodward Iron Company Group Policy were deducted by the employer, and there was no opportunity for other payment of premium on said policy, the proceeds of which are the subject of this controversy.

The evidence further shows that Lila did not know that Safronia was named as beneficiary in the said policy. Lila retained possession of the policy, as we have indicated, and when insured died, delivered the policies to the funeral home, which was making arrangements for insured's burial. Without the knowledge or consent of Lila, or authority to do so, the funeral home returned the policies to Safronia instead of to Lila, who had given them the policies.

■ The evidence shows that Will Jennings became forgetful a short time before he was taken sick, was so afflicted when he last had the policy, and his memory became worse after such time. The witness was asked what he meant by the words, "He became forgetful?" and answered, "I just meant he would forget at times. I didn't mean he was absolutely,—he was absent minded and I didn't mean to say abnormal, * * *. He never did become abnormal." Appellant's counsel moved to exclude this question and answer, was overruled, and duly excepted. In this ruling of the trial court, we find no error to reverse. The evidence by a third party afforded an inference as to the intent of the assured at the time he repossessed the policies and delivered them to Lila.

■ The effect of our pertinent decisions is that an assignee by gift of an insurance policy must have an insurable interest in the life covered by the policy. Ingram v. Johnson, 226 Ala. 68, 147 So. 172; Helmetag's Adm'r., v. Miller, 76 Ala. 183, 52 Am.Rep. 316. Said cases are not declared in conflict with McDonald v. McDonald, 215 Ala. 179, 110 So. 291. This will also be noted, the last-named rule is without application here, as in this case the assured took out the policy to the named wife as beneficiary, and changed the name of the beneficiary in the policy at a later date of his own volition.

■■ It is a further rule in this jurisdiction that a delivery of an insurance policy by gift must be made with the intention of vesting the immediate ownership in the donee. That is, as between the parties, the circumstances and acts at the time of delivery were such as to clearly show the donor intended to divest himself of its ownership and to invest instanter such ownership in donee. Davis v. Wachter, 224 Ala. 306, 140 So. 361; Phillips v. Phillips, 240 Ala. 148, 198 So. 132; McDonald v. McDonald et al., 215 Ala. 179, 110 So. 291. In such case, the burden of proof, under the rule, one claiming as such donee must be able to state clearly and convincingly the facts and circumstances, and "when the gift is inter vivos, and the donee makes no assertion of ownership until after the death of the donor, the same measure and character of proof is required as when it is causa mortis. Thomas v. Tilley, 147 Ala. 189, 41 So. 854; Wheeler v. Glasgow, 97 Ala. 700, 11 So. 758." [224 Ala. 306, 140 So. 363]

■ When such intent is clearly shown as to an assignment by delivery, and without writing to that effect, it is sufficient to vest the ownership in equity of the policy and its proceeds as against a named beneficiary in the policy. Whitman v. Whitman, 225 Ala. 113, 142 So. 413; Phillips v. Phillips, supra; McDonald v. McDonald, supra; Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25. It was declared in the last-cited case, that if there is limitation in the policy as to the method of changing the beneficiary, it is solely for the benefit of the company, and if the assured does not take advantage of it, "no one else may do so." See 2d Cooley's Briefs on Insurance, p. 827. In Whitman v. Whitman, 225 Ala. 113, 142 So. 413, the Chief Justice takes note of McDonald v. McDonald, supra, and indicates it is not opposed to the rule thus stated.

■■ The text writer, Joyce on Insurance, Vol. 4, §§ 2326a–2358, pp. 3968–4030, and the authorities in New York, Maryland, Texas, Pennsylvania, Nebraska and Minnesota are to like effect. The rule in this jurisdiction, as stated in well-considered text books and general authorities, is that a life insurance policy held by the insured on his own life is a "chose in action," which, like a chattel, may be the subject of a gift. When the right to change the beneficiary is reserved, the named beneficiary has no vested right in the policy before the death of the insured, and a change of beneficiary as between claimants may be made by gift of the policy to another than the named beneficiary, if done with the intent to presently pass title to the donee, and make the donee beneficiary of

694

the policy. Such a gift may be made effective by words and acts without writing. That is, a completed gift must appear in this as in other gifts of chattels. McDonald v. McDonald, 215 Ala. 179, 110 So. 291.

This rule was recently followed in Barfoot et al., v. Barfoot, 245 Ala. 593, 18 So. 2d 465, and the announcement made that interest of the named beneficiary in a life policy, providing for a change of beneficiary at the will of the insured, is a mere expectancy.

The question propounded to appellant's counsel by one of the justices on oral argument, was on the theory that any transaction between the donee of an insurance policy and a donor, resulting in a gift, is probably controlled by Code 1940, Tit. 7, § 433, Code 1923, § 7721. Although the present controversy is between the person who was named beneficiary in the policy, which reserved the right in insured to change the beneficiary and the donee, the principle on which the above section applies is that they both claim as successors in interest to the rights of the insured. Insured being dead, the prohibitions of said section have application, although his estate may not be interested, when the estates of his successors are interested. Federal Land Bank of N. O. v. Curington, 233 Ala. 263, 171 So. 361. What, then, is the effect of this statute, touching appellee's testimony, showing the gift to her, and the consummation thereof by delivery to her of the chose in action before insured's death, which is endorsed by the company, as follows:

the exception. Phillips v. Morris, 169 Ala. 460, 53 So. 1001, 1002; Code 1940, Tit. 7, § 433, p. 370; Goodgame v. Dawson, 242 Ala. 499, 7 So.2d 77.

The exception to this rule is where the evidence is offered against one who succeeded to the rights of decedent by a transaction effective during his life. Goodgame v. Dawson, supra; Nelson v. Howison, 122 Ala. 573, 25 So. 211. The beneficiary named in a policy with the right to change at any time acquires no rights effective during the life of insured, and, therefore, is protected by the statute on the same principle that protects decedent. Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; Summers v. Summers, 218 Ala. 420(8), 118 So. 912; McDonald v. McDonald, 212 Ala. 137(6), 102 So. 38, 36 A. L.R. 761.

She, at the maturity of the policy by death of the insured, occupies a position which resembles, in the respect here material, the legatee in a will. Both beneficiary and legatee are designated by the decedent to take at his death and occupy the same status as his distributees. When there is no consideration obligating the decedent to do so, that of both is but an expectancy. We have held that the statute applies for the benefit of a legatee the same as an heir, William v. Dent, 233 Ala. 109, 170 So. 202, and for like reason it also applies for the benefit of a beneficiary situated like appellant.

| "Date Endorsed | Beneficiary | Endorsed by |
| --- | --- | --- |
| "7–31–37 | Safronia Jennings, wife | DHA." ? |

The rule excluding testimony regarding transactions with or statements by deceased persons whose estate is interested in the suit, is for the protection of the estates of deceased persons. Rogers v. Austill, 213 Ala. 163, 104 So. 321. It was said in Hill v. Helton, 80 Ala. 528, 1 So. 340, 344, that "the purpose of the limitation is to exclude a party to the transaction or statement from rendering it in his own interest after the death of the other party." And this protection extends also to the rights of the heirs and others claiming in succession or privity. Dolan v. Dolan, 89 Ala. 256, 7 So. 425, 426; Federal Land Bank v. Curington, supra. E converso, one not interested in the suit, or claiming in privity with deceased, is not disqualified by

The appellant objects to testimony of Iola Reese touching the instant policy. The record recites:

"Q. Do you know at that time where his policies of insurance were? A. At the time he died?

"Q. Yes. A. Lila Jennings, his wife, had them.

"Q. Lila Jennings, his wife, had these policies of insurance? A. Yes, sir.

"Q. Tell the Court whether or not on any occasions when he was discussing the proceeds of his policies he told you he wanted Lila Jennings to have his policies, they belonged to her? * * * A. That was about two weeks after he died—before he died, two weeks before he died, before he *taken* sick he said he wanted his wife to

come back home and him and Lil*e* live together until death; that he brought his papers back and *give* them to her. He said he *give* them to her. * * *."

▉▉▉▉ Evidence of like effect to that given by Iola Reese, touching the existence of the policies and the intention to give them to Lila, by parties not interested within the inhibitions of the statute, was properly admitted. Code 1940, Tit. 7, § 433. Evidence of Lila Jennings touching the declarations of assured was improperly admitted. The burden of proof rested upon Lila Jennings to substantiate the gift without a violation of the statute above cited. The assured understood, as the policy shows, how to change the beneficiary therein, and this he did not do, although he had time and opportunity to have done so during life. The observation was duly made from time to time in the trial by counsel that such evidence should be excluded, but the court did not so exclude the inhibited evidence, and the fact that the court overruled the motion to exclude at the conclusion of the trial indicates that the illegal evidence was considered in the rendition of the decree. Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12; Schwab v. Powers, 228 Ala. 205, 153 So. 423; Acts of Alabama 1943, p. 105, Code 1940, Tit. 7, § 372(1).

The policy introduced in evidence is in form a certificate of the "Provident Life and Accident Insurance Company, Chattanooga, Tennessee," which certifies "That Will Jennings * * * under Group Policy No. 3616, with its Supplements, issued to the Woodward Iron Company, * * * covering its employees, is entitled to benefits in accordance with the terms conditions and limitations thereof, * * * A. Death Benefit—(Life Insurance)...... Five Hundred ($500.00) Dollars * * *." The policy is signed by the president of the company and on the first page thereof are the words, "Beneficiary Mabel Jennings Relationship Wife." The policy carries the "Effective Date January 1, 1936," and contains the following provision:

"Any employee insured under the Group Policy may, if of legal age, at any time and from time to time during the continuance of his insurance, change any designated beneficiary by filing a written request at the Home Office of the Company, such change to take effect only when endorsed by the Company on the Employee's Certificate during the lifetime of such employee.

"If there is no designated beneficiary surviving at the death of any employee, the Insurance with respect to such employee shall be payable to the Executors or Administrators of the Estate of Such employee."

As we have indicated, the insured, under the provisions of such clause, changed the named beneficiary from Mable Jennings to Safronia Jennings—Wife on July 31, 1937, which is endorsed by the company. The entire policy appears in the record as "Exhibit 'A' Re: Safronia Jennings."

The marriage license contained in the record as "Exhibit No. 1 Re: Lila Jennings" is of date of Feb. 27, 1926, signed by "W. J. Smith, M. G.", certifying the solemnization of marriage between Will Jennings and Lila Mae Bryson of Birmingham at Birmingham.

As stated above, the evidence is to the effect that Lila and Will Jennings lived together as husband and wife until the date of their separation in 1931. She did not obtain a divorce from him, and the records in the county show that the bonds of matrimony have not been dissolved between the parties. The insured left Lila and lived with one Mable as husband and wife, from whom he separated; and next lived with Safronia for two or three years as husband and wife. The foregoing indicates why the group policy on the life of Jennings first designated Mable Jennings as beneficiary and why the same is endorsed on the front of the certificate by the words: "See 'Register of Change of Beneficiary' on Back of Certificate," and why under the power contained in the certificate for a change of beneficiary, it is endorsed as we have set out. Such is the condition of the certificate of insurance and marriage license contained in the record.

The foregoing indicates that the cause should be retried under the rules we have referred to and on legal evidence that may be presented in the premises. The decree of the circuit court is laid in error, because of failure to exclude the testimony of the alleged donee, Lila Jennings, a party in interest, after the death of Will Jennings testifying as to his conversations with her relative to the policy and the gift thereof to her, which is prohibited by the statute.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.